IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-460-JHP-FHM |
| | ) | |
| OLD REPUBLIC INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO COMPEL

COMES NOW the Plaintiff, John Johnson, and, pursuant to Fed. R. Civ. P. 37(a)(2) and LCvR 37.1,[1] moves this Court for an order compelling the Defendant Old Republic Insurance Company ("Old Republic") to provide Plaintiff with a complete copy of its files relating to Plaintiff's uninsured/underinsured motorist ("UIM") claim.   In support, Plaintiff shows the Court the following:

## INTRODUCTION

In 2008, Plaintiff John Johnson was employed by the American Automobile Association ("AAA").   AAA had a policy of UIM insurance coverage written by Defendant Old Republic. On June 16, 2008, Mr. Johnson was dispatched by AAA to assist Ireta Tarwater, whose car had stalled in the middle of a busy intersection in Tulsa, Oklahoma.  During the course of providing assistance, Mr. Johnson was injured when he was pinned between his AAA vehicle and Ms. Tarwater's vehicle because Ms. Tarwater failed to apply pressure to her breaks as instructed.  Mr. Johnson made a claim against the

---

[1] The parties have personally conferred regarding the discovery dispute raised herein but have been unable to resolve the issue.   Plaintiff represents that the assistance of the Court is necessary.

Old Republic policy.  Based on correspondence from Old Republic, representations made by employees and agents of Old Republic, and the way the Old Republic policy was written, Plaintiff believes that Old Republic refused to provide benefits in part because the injury occurred in the course and scope of his employment, which would mean his injuries would be covered by AAA's workers' compensation insurance policy. Under Oklahoma law, unlike in several other states, a UIM insurer cannot exempt a claim for injuries just because those injuries are also covered by a separate workers' compensation policy.[2]  It is Plaintiff's belief that Old Republic unreasonably delayed Plaintiff's claim by neither expressly admitting or denying his claim, and instead focusing on the impermissible workers' compensation exclusion, the argument that Plaintiff was not "occupying the covered vehicle,"[3] and an unreasonable undervaluation of Plaintiff's damages.

In discovery, Plaintiff has requested his entire uninsured/underinsured motorist insurance policy claim files, communication related to Plaintiff's claim, and any and all internal documents of any type related to the adjustment of Plaintiff's claim.  In response, Old Republic has produced parts of its internal file and the claims file of ESIS, Inc., an independent organization used by Old Republic to administer claims against it.  However, numerous pages of both files were not produced and several parts of the pages that were produced have been heavily redacted.  Defendant produced lengthy privilege logs claiming that voluminous portions of both the Old Republic and the ESIS claims files are

---

[2] *See Starrett v. Oklahoma Farmers Union Mut. Ins. Co.*, 1993 OK 30, 849 P.2d 397, 399, citing *Chambers v. Walker*, 653 P.2d 931, 935 (Okla. 1982).

[3] This Court has already found Old Republic's position as contrary to Oklahoma precedent concerning the definition of "occupancy" under Oklahoma UIM policies.  *See* Opinion and Order, Docket # 45.

subject to attorney-client privilege, work product protection and contain "proprietary" information.  *See* Ex. 1 (Old Republic Privilege Log) and Ex. 2 (ESIS Privilege Log). Plaintiff is seeking an order from this Court directing Defendant to produce the complete claims files maintained by Old Republic and by ESIS, unredacted, up until the date Old Republic was served with this lawsuit, July 27, 2010.  Plaintiff is also seeking an order from this Court directing Defendant to produce those parts of the claims files, created after July 27, 2010, that relate to Old Republic's ongoing investigation and evaluation of Plaintiff's UIM claim.

## ARGUMENT AND AUTHORITY

### I. DISCOVERY STANDARD

It is well established that discovery under the Federal Rules is limited only by relevance and burdensomeness.  *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *see also AG Equip. Co. v. AIG Life Ins. Co*., 2008 U.S. Dist. LEXIS 99915 (Okla. N.D. 2008) ("At the discovery phase of litigation, 'relavancy' is broadly construed and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."). Rule 401 of the Federal Rules of Evidence defines "relevant evidence" to mean "evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added). The federal discovery rules warrant liberal construction.  *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (directing "a broad and liberal treatment" of discovery rules).

"[B]ecause all privileges are 'in derogation of the search for truth,' both [the attorney-client privilege and the attorney work product protection] are narrowly

construed." *Lindley v. Life Investors Insurance Company of America*, 267 F.R.D. 382, 388 (N.D. Okla. 2010), citing *United States v. Kapnison*, 743 F.2d 1450, 1456 (10th Cir. 1984); *see also In re Qwest Communications Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (Privileges "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.") (internal citation omitted); *Sanchez v. Matta,* 229 F.R.D. 649, 655 (D.N.M. 2004) ("The attorney-client privilege is a narrow one and was not intended to be a catch-all exception to a process of broad and liberal discovery."). Thus, the party asserting either attorney-client privilege or work-product protection has the burden of clearly showing that either or both apply.[4]  *Lindley*, 267 F.R.D. at 388; *see also Barclays-American Corporation v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

## II.  Pre-litigation Claims File

The claims file maintained by an insurer is the heart and soul of a bad faith/breach of contract claim.  It is the best evidence to determine what the insurer and its employees were doing and thinking during the time the claim was being evaluated. *See, e.g., Brown v. Superior Court in and for Maricopa County*, 670 P.2d 725 (Ariz. 1983) ("[B]ad faith actions against an insurer…can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did.  The claims file is a unique, contemporaneously-prepared history of the company's handling of the claim; in an action such as this the need for the information in

---

[4] In a diversity action, issues related to the attorney-client privilege are controlled by state law, while claims of attorney work product are matters of federal law. *Frontier Refining, Inc. v. Gorman-Rupp Co. Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir. 1998).

the file is not only substantial, but overwhelming."); *see also Silva v. Fire Ins. Exchange*, 112 F.R.D. 699, 699 (D. Mont. 1986) ("Under ordinary circumstances, a first-party bad faith claim can be proved only by showing the manner in which the claim was processed, and the claims file contains the sole source of much of the needed information.  The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim…the general rule in cases of this nature should be that the plaintiff is absolutely entitled to discovery of the claims file.")

Here, Plaintiff's action is premised on Old Republic's continued delay of his UIM claim by focusing on unfounded grounds for denial, including exclusions written in the policy and consistent undervaluation of his damages.  As such, what Old Republic's agents and adjustors were thinking and doing during the time his claim was being handled is materially relevant and of the utmost importance.  *See Timmons v. Royal Globe Ins Co.*, 1982 OK 97, 653 P.2d 901, 917 ("Appellants would have the Court to consider relevant only [that] evidence relating to this formulation of those grounds for non-coverage.  The cause of action sued upon is not this narrow, however.  The essence of the cause before the Court is failure to deal fairly and in good faith with an insured and as such, the jury may be shown the entire course of conduct between the parties to arrive at a determination of whether that standard has been breached or not."); *see also Brown*, 670 P.2d at 735 ("[T]he reasons the insurance company denied the claim or the manner in which it dealt with it are central issues to Brown's claim of bad faith.  Thus, the strategy, theories, mental impressions and opinions of Continental's agents…are directly at tissue.

When mental impressions and the like are directly at issue in a case, courts have permitted an exception to the strict protection of Rule 26(b)(3) and allowed discovery.").

A large part, but not all, of the withheld documentation is correspondence by and between Old Republic and/or ESIS employees and Lawson Vaughn, an attorney hired by Old Republic to assist in handling Plaintiff's UIM claim.[5]   The missing portions of Plaintiff's claims files relate to the investigation and valuation of his claim and are therefore

---

[5] Mr. Vaughn was heavily involved in Old Republic's investigation of Plaintiff's claim both before and after this lawsuit was filed – he was asked by Old Republic to perform an examination under oath of Mr. Johnson so that Old Republic could evaluate Plaintiff's UIM claim; he was authorized by Old Republic to communicate with Mr. Johnson's counsel regarding the status of Plaintiff's UIM claim and to accept documentation supporting Mr. Johnson's claim on Old Republic's behalf. Mr. Vaughn *consistently and directly* participated in the evaluation of Plaintiff's claim. *See* Letter from R. Lawson Vaughn to Oleg Roytman, dated 3/24/10 (emphasis added), Ex. 3 ("Please be advised that the medical documentation provided concerning Mr. Johnson's injuries has been reviewed.  Based on the known information to date, it has been determined that the value of his claim is within the tortfeasor's limit of $250,000. It also appears that the records provided may be incomplete.  It would be appreciated if you would have the enclosed medical authorization executed and returned to me at your earliest convenience.  We will continue to investigate and will be happy to consider any additional information that is provided and/or obtained. Plaintiff's counsel at the time dealt exclusively with Mr. Vaughn regarding Plaintiff's claim.  For example, Mr. Vaughn sent yet another medical authorization and request for records to Plaintiff's counsel on May 3, 2010, *see* Letter from Vaughn to Roytman dated 5/3/10, Ex. 4; and Mr. Roytman's office delivered records directly to Mr. Vaughn, *see* Facsimile Cover Sheet from Wehmeyer to Vaughn dated 6/29/10, Ex. 5.  Mr. Vaughn continuously represented that he, acting as the agent for Old Republic, would obtain the medical records necessary to evaluate Plaintiff's claim and would make a coverage determination based on his evaluation.  *See* Letter from Vaughn to Roytman dated 7/16/10, Ex. 6 ("I received the signed medical authorization your paralegal sent on May 13, 2010.  The medical records were requested at that time, however, they have not all been received to date… I will follow-up with the medical providers to attempt to speed up the process of providing the missing records.  It would be appreciated if you would provide me with Mr. Johnson's documentation concerning his lost income.  Old Republic will be able to re-evaluate this claim once the remaining medical documentation and Mr. Johnson's lost wage documentation has been received. Please do not hesitate to contact me should you have any questions.").  Mr. Vaughn was also responsible for obtaining documentation and evaluating Plaintiff's lost wage claim after Old Republic was served with notice of this lawsuit.  *See* Letter from Vaughn to Roytman, dated 8/2/10, Ex. 7.

directly relevant to material issues in his claim for bad faith, and the same is certainly "reasonably calculated to lead to the discovery of" evidence relevant thereto. *See* Fed. R. Civ. P. 26. The mere fact that an attorney was involved in the matter is not sufficient to make a routine business investigation suddenly privileged. Recently, Judge Clearly addressed this issue in the case of *Butterfly-Biles v. State Farm Life Ins. Co.*, 2010 U.S. Dist. LEXIS 4701 (N.D. Okla. 2010).  In that case, the plaintiff sought to compel testimony from State Farm's representative regarding State Farm's investigative conduct, including conduct that took place after the lawsuit was filed.  *Butterfly-Biles*, 2010 U.S. Dist. LEXIS 4701 at *7-9.  The Court determined that because the focus of the claim was State Farm's conduct up to and including the time it made a decision to deny Plaintiff proceeds under the policy, that conduct was relevant and discoverable even after a lawsuit was filed and an attorney was involved:

> [I]n its Answer, State Farm stated that it 'has not completed its investigation or determined whether it will pay the death benefits  under the policy….' On May 15, 2009, State Farm filed an interpleader counterclaim and thereafter deposited the insurance proceeds  with the Court Clerk. The Court agrees with State Farm that its conduct post-interpleader is not relevant to Plaintiff's bad faith claim; however, State Farm's investigation efforts up until the interpleader may be relevant since State Farm had not made a decision to pay benefits,  [or]  deny  the claim.  **The investigation of Plaintiff's claim was within the normal course of State Farm business.**  Since no decision as to payment or denial had been made even after the lawsuit was filed, this investigatory conduct may be relevant to Plaintiff's bad faith claim. The fact that State Farm had an attorney involved in the matter after the lawsuit was filed is not sufficient to make a routine business investigation suddenly privileged.

> *        *        *

7

> State Farm offered three explanations for directing Boden
> not to testify on this subject: (1) Post-litigation privilege,
> (2) work product, and (3) 'consulting the experts.' The
> Court is unaware of a blanket post-litigation privilege. As
> discussed above, since no decision as to payment or denial
> of Plaintiff's claim was made at the time the lawsuit was
> filed, and State Farm stated it was still investigating, post-
> litigation activities are relevant and unprivileged. Second,
> the routine insurance investigation begun after Plaintiff
> made her claim under the life insurance policy did not
> suddenly become attorney work product simply because a
> lawsuit was filed. Finally, State Farm's assertion that
> testimony on this subject was precluded because 'It's
> consulting the experts' is unsupported by any authority.

*Id.* at * 8-10 (citations omitted).

If the fact that an insurance company involves an attorney *after* suit is filed is not sufficient to make a routine business investigation privileged, there is no way that Mr. Vaughn's *pre-litigation* involvement is sufficient to make privileged those parts of the investigative claim file created before suit was ever filed. *See also Scott v. Peterson*, 126 P.3d 1232, 1234 (Okla. 2005). Additionally, the fact that an attorney's involvement relates to legal interpretations and opinions is not sufficient to shroud investigative conduct in privilege if those interpretations and opinions have a bearing on the insurer's handling of the claim:

> In the case at bench it is possible, for example, that the
> insurer denied payment of the claim because of a legal theory
> (that there was no coverage), a mental impression (that the
> insured had exaggerated the claim), an opinion (that the file
> was attributable to arson), etc. If the file shows such a reason
> for the denial of the claim, this information would go to the
> very heart of the question of whether the company acted in
> good or bad faith and must be admissible, and thus
> discoverable, in a subsequent bad faith case. Similar
> considerations would exist in a variety of other actions such
> as legal malpractice, malicious prosecution, abuse of process
> and all other cases in which the issue is the motive or reasons
> for, or the propriety or impropriety of a party's actions in

handling a prior legal matter or proceeding. Thus, the absolute immunity accorded for the essence of work product – mental impressions, conclusions, opinions or legal theories of the attorney or other representative – would apply **only to the case being litigated (here, the bad faith case) and not to such material prepared for some prior case which is the subject of the instant litigation**. Of course, the 'true work product,' like all other trial preparation material, will continue to enjoy the qualified immunity even though prepared in another case

*See Brown*, 670 P.2d at 735-36, nt. 8 (emphasis added).

It is Plaintiff's belief that the redacted and withheld portions of the claim file reveal the legal theories, mental impressions and opinions of Old Republic and its agents that Old Republic relied on when handling Plaintiff's claim and that Old Republic used to support its position not to tender benefits. Here, as in the *Brown* case, this information goes to the very heart of the question of whether or not Old Republic acted reasonably and in good faith. Plaintiff is not seeking the mental impressions, conclusions, opinions or legal theories of Defendant's present counsel that relates to *this* case; rather, he is seeking only the information set forth in the claims files that relate to Old Republic's investigation and evaluation of his claim.

A party seeking work product immunity under Rule 26(b)(3) must establish that the requested materials are (1) "documents and tangible things;" (2) "prepared in anticipation of litigation or trial;" (3) "by or for another party or by or for that party's representative." *Feldman v. Pioneer Petroleum, Inc.*, 87 F.R.D. 86, 88 (W.D. Okla. 1980; *see also Hall v. Goodwin*, 1989 OK 88, 775 P.2d 291, 295 ("The crucial issue to a trial judge is whether the material is prepared in anticipation of litigation. In order to determine whether the material is prepared in anticipation of litigation, a court must determine whether the document was secured in the regular course of duties performed

by the individual as an employee of the insurance company (the ordinary course of business). In other words, is such a document typically prepared by the insurance company prior to notice of a lawsuit?").

As with the attorney-client privilege, the burden is on Defendant to establish work-product protection. *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir.1984); *see also Sanchez v. Matta,* 229 F.R.D. at 654. Establishing work-product protection often depends on a showing that there was a reasonable threat of litigation and that the threat was the motivation for creating the document(s) in question. *Lindley*, 267 F.R.D. at 394 (emphasis added); *see also United States ex rel. Fago v. M&T Mortgage Corp.*, 238 F.R.D. 3, 6 (D.D.C. 2006) ("'In anticipation of litigation' contains two related, but nevertheless distinct, concepts. One is temporal. The other is motivational."). This is sometimes addressed in terms of a party's "primary motivation" for creating the document(s) in question. *Id*. ("A key inquiry is whether the documents would have been created *regardless* of whether litigation was in the offering. In other words, the anticipation of future litigation must have been the primary motivation which led to the creation of the documents.") (emphasis in original) (citations omitted); *see also Sanchez,* 229 F.R.D. at 655. "Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even likely chance of litigation, does not give rise to work product." *Ledgin v. Blue Cross & Blue Shield,* 166 F.R.D. 496, 498 (D.Kan. 1996) (emphasis added) (citations omitted).

Lawson Vaughn handled Plaintiff's claim for insurance benefits against Defendant personally and directly and Old Republic relied on Vaughn's representations,

opinions and conclusions when determining whether or not to pay Plaintiff's claim. Communications between Mr. Vaughn and Defendant were not made for the purpose of facilitating the rendition of legal services; rather, they were made for the purpose of facilitating the investigation and evaluation of Plaintiff's claim under the applicable policy of insurance, a routine *business* purpose.   It is axiomatic that investigating and evaluating an insurance claim is a matter of routine business for an insurance company. *See Lindley*, 267 F.R.D. at 399; *see also Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663-664 ("**It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product**.") (emphasis added); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 700-701 (S.D. Fla. 2007) (finding that documents prepared before the final decision on an insured's claim were not protected under the attorney work product doctrine, nor were they privileged).   When Mr. Vaughn was involved in the handling of Plaintiff's claim, there was no pending or active litigation against AAA, nor was there any reason to suggest that litigation was imminent.   He simply performed routine business activities necessary for an insurer to investigate and evaluate a claim.   If an insurance company were permitted to claim privilege as urged by Defendant, it would be able to farm out the investigation and evaluation of its claims to persons with *juris doctorate* degrees and never have to produce *any* documentation in a bad faith case such as this.   Such a result is in direct conflict with both federal and Oklahoma law as described herein. *See Lindley*, 267 F.R.D. at 392, n.11 ("'[W]here businesses use their attorneys for non-legal purposes

to promote the interests of the corporation, their communications are not protected by the privilege…Common sense tells us that there is a difference between merely providing legal information and providing legal advice.'") citing John K. Willa, *The Attorney-Client Privilege and In-House Corporate Counsel*, 1 Corporate Counsel Guidelines 1:16 (2009) (footnotes omitted).

### III.  POST-LITIGATION CLAIMS FILE.

The relevant time period for a claim of bad faith is that time during which an insurance company was handling, investigating and evaluating a claim.  *See Butterfly-Biles*, 2010 U.S. Dist. LEXIS 4701, * 8.  It is well established in Oklahoma jurisprudence that an insurer's duty to act in good faith and fair dealing continues until the benefits due under the policy in question are denied or paid *in toto*.  *Hale v. A.G. Ins. Co.*, 2006 OK CIV APP 80, ¶ 6 ("[T]he analysis in bad faith cases indicates the cutoff for relevant evidence is the date of payment or denial of the claim. The duty of good faith and fair dealing exists during the time the claim is being reviewed") *citing Newport v. USAA*, 2000 OK 59, 11 P.3d 190 and *Skinner v. John Deere Ins. Co.*, 2000 OK 18, 998 P.2d 1219.

Plaintiff does not dispute that some of the documents in Plaintiff's UIM claims files that were created after Old Republic was notified of the instant lawsuit are protected. However, as Judge Clearly recently opined, the mere fact that litigation is pending does not provide a blanket protection over all documents. *See Butterfly-Biles*, 2010 U.S. Dist. LEXIS 4701 at * 9 ("The investigation of Plaintiff's claim was within the normal course of State Farm's business. Since no decision as to payment or denial had been made even after the lawsuit was filed, this investigatory conduct may be relevant to Plaintiff's bad

faith claim. The fact that State Farm had an attorney involved in the matter after the lawsuit was filed is not sufficient to make a routine business investigation suddenly privileged."). Old Republic has never expressly denied Plaintiff's claim.  In fact, it continued to investigate Plaintiff's claim, by and through Lawson Vaughn, even after this lawsuit was filed and served. *See* note 4, *supra*; Ex.  7.  In its Answer to the Complaint filed herein, Old Republic denied that it "refuses to tender benefits under the applicable policy of insurance," *see* Complaint, Dkt. # 1, ¶ 11, and instead admitted only that it "has not paid any policy benefits to Plaintiff." *See* Answer, Dkt. # 9, ¶ 11.  Moreover, Old Republic expressly represented that its evaluation of Plaintiff's claim is "continuing." *Id*. at 4, ¶ 6 (Affirmative Defenses).  Because Old Republic's investigation and evaluation of the claim is ongoing, post-litigation investigatory conduct contained in the claims files is as relevant and material to this case as pre-litigation conduct. Accordingly, Plaintiff asks that all documents contained in the claims files created after July 27, 2010 that relate to Old Republic's continuing investigation and evaluation of Plaintiff's claim be produced to Plaintiff.

## CONCLUSION

The files maintained by Old Republic and ESIS regarding Plaintiff's insurance claim lie at the very heart of this litigation and reveal the legal theories, mental impressions and opinions of Old Republic and its agents that Old Republic relied on when handling Plaintiff's claim.  Defendant has asserted a blanket privilege with respect to communications with Mr. Vaughn simply because he is a licensed attorney.  As discussed above, this is not an appropriate assertion of privilege. The claim file documents at issue were created for the *business purpose* of determining whether or not

to admit or deny Plaintiff's claim.  The sought information goes to the ultimate question of whether or not Old Republic acted reasonably and in good faith.  Plaintiff is not seeking the mental impressions, conclusions, opinions or legal theories of Defendant's present counsel that relates to *this* case; rather, he is seeking only the information set forth in the claims files that relate to Old Republic's investigation and evaluation of his UIM claim.

WHEREFORE, premises considered, Plaintiff prays this Court compel the production of the entire, unredacted files maintained by and for Old Republic and ESIS relating to Plaintiff's insurance claim at issue in this litigation.

Respectfully submitted,

SMOLEN, SMOLEN & ROYTMAN, PLLC

/s/Donald E. Smolen, II
Donald E. Smolen, II, OBA #19944
701 S. Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667 P
(918) 585-2669 F
donaldsmolen@ssrok.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:  Thomas E. Steichen and Jessica Dickerson.

/s/Donald E. Smolen, II